IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENDO PHARMACEUTICALS INC. and MALLINCKRODT LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) C.A. No. 14-1381-RGA |
| ACTAVIS INC. and ACTAVIS SOUTH ATLANTIC LLC, | ) ) ) ) |
| Defendants. | ) ) |

**REPLY BRIEF IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COUNTS I, III AND IV
OF PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

YOUNG CONWAY STARGATT & TAYLOR LLP
Adam W. Poff (No. 3990)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
*apoff@ycst.com*
*rvrana@ycst.com*

OF COUNSEL:

HOLLAND & KNIGHT LLP
Charles Weiss
31 West 52nd Street
New York, NY 10019
(212) 513-3551
charles.weiss@hklaw.com

*Attorneys for Defendants Actavis Inc. and Actavis South Atlantic LLC*

Dated: March 23, 2015

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

   I.  ENDO CANNOT SUSTAIN A CLAIM FOR INFRINGEMENT ON THE
      PLEADINGS ........................................................................................................... 2

      A.  The acts that Actavis has taken, as pled by Endo, cannot constitute
          inducement to infringe the '737 patent ....................................................... 2

      B.  Mere notice of Endo's claims is insufficient to survive this motion to dismiss ........... 4

   II.  THE '737 PATENT IS INVALID FOR CLAIMING AN UNPATENTABLE
       LAW OF NATURE ................................................................................................. 5

      A.  Endo's argument for induced infringement precisely illustrates why the '737
          patent is directed to unpatentable subject matter ........................................... 5

      B.  Straightforward application of the *Mayo/Alice* two-part test shows the '737
          patent to claim unpatentable subject matter ................................................. 7

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. TorPharm, Inc.*,
    300 F.3d 1367 (Fed. Cir. 2002) .................................................................................. 3

*Alice Corp. Pty, Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ............................................................................................... 7

*AstraZeneca LP v. Apotex, Inc.*,
    633 F.3d 1042 (Fed. Cir. 2010) .................................................................................. 4

*AstraZeneca Pharms. LP v. Apotex Corp.*,
    669 F.3d 1370 (Fed. Cir. 2012) ............................................................................... 3, 5

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
    659 F.3d 1057 (Fed. Cir. 2011) .................................................................................. 8

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
    No. WDQ-04-2607, 2012 WL 3264941 (D. Md. Aug. 9, 2012) ................................ 9

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ..................................................................................................... 7

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) .................................................................................. 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .................................................................................. 2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ....................................................................................... passim

*Mirror World, LLC v. Apple Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) .................................................................................. 3

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012) ........................................................................... 5

*Simon v. FIA Card Servs., N.A.*,
    732 F.3d 259 (3d Cir. 2013) ....................................................................................... 5

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003) ............................................................................... 2, 3

**Statutes**

35 U.S.C. § 101 ................................................................................................................ 7

# INTRODUCTION

Endo cannot state a claim for induced infringement of U.S. Patent No. 8,808,737 ("the '737 Patent") against Actavis because it cannot point to specific language in Actavis's product label directing physicians to infringe the claims. The '737 patent's claims require physicians to measure a patient's creatinine clearance level (an indication of kidney function), determine which of four specified ranges it falls into, and administer a lower dose of oxymorphone to the patient "in dependence on" the measured level such that the concentration of oxymorphone in the patient's blood remains under a particular number. The language of Actavis's product labels, which do nothing more than instruct physicians to "reduce the dose" of oxymorphone in renally impaired patients and inform them of a clinical study, cannot induce infringement of each limitation of these claims.

Endo's claims related to the '737 patent should also be dismissed because the '737 patent's addition of a step to administer oxymorphone for pain relief, a step described in the patent's own specification as having been known in the art for decades, is trivial post-solution activity that does not render claims patentable. A patent "could not simply recite a law of nature and then add the instruction 'apply the law.'" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297 (2012). Not only does the '737 patent do nothing more than that, but Endo argues that Actavis induces infringement by doing nothing more than telling doctors the law of nature; Endo cannot even argue that Actavis has instructed doctors to apply it. This is not to say that no method of treatment patent is patentable, simply that a claim to a law of nature— here, as Endo freely admits, a <u>discovered</u> relationship between bioavailabity of oxymorphone and level of renal impairment (D.I. 18 (Opp. Br.) at 14)—cannot be made patentable by adding an "administering" step that is common knowledge within the relevant art and confirmed to be common knowledge within the asserted patent itself.

1

# ARGUMENT

## I. ENDO CANNOT SUSTAIN A CLAIM FOR INFRINGEMENT ON THE PLEADINGS

### A. The acts that Actavis has taken, as pled by Endo, cannot constitute inducement to infringe the '737 patent

Endo cannot show that the label for either of Actavis's products instructs physicians to practice every limitation of a claim of the '737 patent. The '737 patent's claims require a physician to perform a series of specific steps:

(1) providing a solid oral controlled release dosage of oxymorphone from about 5 mg to about 80 mg in a controlled release matrix;

(2) measuring a creatinine clearance rate of a patient;

(3) determining that rate to be within one of four ranges (which correspond to a patient's level of renal impairment);

(4) administering a lower dosage of oxymorphone "<u>in dependence on which creatinine clearance rate is found</u>," such that

(5) after administration, either the average area-under-curve or maximum concentration of oxymorphone is less than a specified number (which varies between the six patent claims).

D.I. 12 (Opening Br.) at 4; D.I. 1, Ex. A at 48:7-26. In its opposition brief, Endo fails to identify language in Actavis's labels instructing a physician to follow these steps; it only points generally to language instructing a physician to "reduce the dose" in "patients with renal impairment." D.I. 18 at 9-10.

In order to show inducement, Endo would have to show that Actavis's product labels instruct physicians to perform <u>every</u> limitation of a patented claim. *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003) ("Inducement requires proof that the accused infringer knowingly aided and abetted another's direct infringement of the patent."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a

method claim, a person must have practiced all steps of the claimed method."). Its failure to identify such language is dispositive.

In particular, an ANDA applicant cannot be liable for induced infringement of a method of treatment patent where the product label does not direct a physician to perform each step of the patented method. *AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1379 (Fed. Cir. 2012) ("*AstraZeneca II*"); *Warner-Lambert*, 316 F.3d at 1354-55. Endo's suggestion that these cases only apply to ANDAs for a "different indication" from the patented method, D.I. 18 at 11-12, is incorrect. The question, per the Court in *AstraZeneca II*, is whether a "use" listed in the ANDA or on the proposed label is claimed in a patent. 669 F.3d at 1378. The use claimed by the '737 patent is not merely the administration of oxymorphone for pain relief; the patent freely admits that oxymorphone was "widely used in the treatment of acute and chronic pain" in the prior art. D.I. 1, Ex. A at 1:19-22.

Moreover, even if Endo could somehow find suggestion to perform each step of a claim somewhere in Actavis's label, the possibility that a physician could cobble together separate instructions in a label to infringe a method claim is insufficient to show inducement. In *Mirror World, LLC v. Apple Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012), the court affirmed judgment as a matter of law of no induced infringement where the only evidence of inducement came from the defendant's user manuals containing instructions in separate places, not connected to each other, to perform the steps claimed by the patent. "When manuals only teach 'customers each step of the claimed method in isolation,' but not 'all the steps of the claimed method together,' the manuals alone cannot support infringement." *Id.* Here, Endo relies on Actavis's labels alone to show inducement—it is forced to rely on the label alone for the ANDA product, *Abbott Labs. v. TorPharm, Inc.*, 300 F.3d 1367, 1373 (Fed. Cir. 2002), and has pled no other factual

allegations to show inducement for the already-approved extended-release oxymorphone tablets. D.I. 12 (Opening Br.) at 8-9. The possibility that a physician could theoretically combine instructions scattered throughout the label—*e.g.*, advice to "reduce the dose" in patients with renal impairment, direction from another section to "initiate the dosing regimen for each patient individually," direction from another section to start at a dose of 50% and titrate slowly, and information in section 12.3 about a study comparing bioavailability of oxymorphone to creatinine clearance rates (D.I. 18 at 9-10)—does not show inducement as a matter of law.

Endo's reliance on *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042 (Fed. Cir. 2010) ("*AstraZeneca I*"), fails because the patent in that case, unlike the patent here, was broad enough to encompass the language in the product label. The representative claim of the patent in that suit was simply: "A method of treating a patient suffering from a respiratory disease, the method comprising administering to the patient a nebulized dose of a budesonide composition in a continuing regimen at a frequency of not more than once per day." *Id.* at 1048. The court found that the label's instruction to "titrate down" from a twice-daily dose would induce infringement because the <u>only way</u> a physician could reduce the dosage was to administer the drug once-daily and therefore infringe. *Id.* at 1057. No such inferred instruction to perform the steps of the '737 patent can be found in Actavis's product label, as merely reducing a dose slowly cannot instruct a physician to perform the precise measuring, determining, and administering a lower dose dependent on level of renal impairment required by the '737 patent.

**B.     Mere notice of Endo's claims is insufficient to survive this motion to dismiss**

The fact that Endo's Complaint "identifies the specific infringing acts, the entity that actively induces infringement (Actavis), and the people it is inducing to infringe" (D.I. 18 at 9) does not immunize the Complaint from a Rule 12(b)(6) motion to dismiss. A Rule 12(b)(6) motion to dismiss may be granted "if, accepting the well-pleaded allegations in the complaint as

4

true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations 'could not raise a claim of entitlement to relief.'" *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259 (3d Cir. 2013); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234-35 (D. Del. 2012) (dismissal of induced infringement claim for failure to allege facts necessary to show intent). Endo's Complaint as to the '737 Patent fails not because it failed to provide enough factual detail, but because the details Endo provided, taken as true, are insufficient to plausibly demonstrate that Actavis will induce infringement through selling its ANDA product or has induced infringement through selling its already-sold extended-release oxymorphone tablets. A claim for indirect patent infringement can be dismissed on a Rule 12(b)(6) motion if the facts pled by the complaint are inadequate to state a claim for indirect infringement, as they do here. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338-39 (Fed. Cir. 2012) (affirming dismissal of contributory infringement because complaint identified substantial non-infringing uses); *AstraZeneca II*, 669 F.3d at 1379 (affirming dismissal of induced infringement in ANDA case because ANDA was submitted only for noninfringing use).

## II.   THE '737 PATENT IS INVALID FOR CLAIMING AN UNPATENTABLE LAW OF NATURE

### A.   Endo's argument for induced infringement precisely illustrates why the '737 patent is directed to unpatentable subject matter

The Court in *Mayo* explained that a patent that states a law of nature does not become patentable simply by adding a limitation instructing to apply that law of nature:

> A patent [] could not simply recite a law of nature and then add the instruction "apply the law." Einstein, we assume, could not have patented his famous law by claiming a process consisting of simply telling linear accelerator operators to refer to the law to determine how much energy an amount of mass has produced (or vice versa). Nor could Archimedes have secured a patent for his famous principle of flotation by claiming a process consisting of simply

5

> telling boat builders to refer to that principle in order to determine
> whether an object will float.

132 S. Ct. at 1297.

Endo is forced to argue, however, that Actavis induced infringement by telling doctors about a law of nature and advising them to "apply the law." Endo attempts to preclude Actavis from informing doctors about a useful law of nature—exactly the type of activity the courts intended to allow through the judicially-created rule that laws of nature, natural phenomena, and abstract ideas are not patentable. The Court in *Mayo* explained that even a claim tied to a narrow law of nature, such as the relationship between measured drug levels and treatment protocol, preempts use and further research into that basic law of nature:

> The laws of nature at issue here are narrow laws that may have
> limited applications, but the patent claims that embody them
> nonetheless implicate this concern [that it will inhibit future
> innovation]. They tell a treating doctor to measure metabolite
> levels and to consider the resulting measurements in light of the
> statistical relationships they describe. In doing so, they tie up the
> doctor's subsequent treatment decision whether that treatment
> does, or does not, change in light of the inference he has drawn
> using the correlations. And they threaten to inhibit the
> development of more refined treatment recommendations . . . that
> combine [the patentee's] correlations with later discovered features
> of metabolites, human physiology or individual patient
> characteristics.

132 S. Ct. at 1302. Endo, to show induced infringement, is forced to argue that Actavis may not tell doctors about a discovered law of nature, and that doctors may not make treatment decisions based on that law of nature. Oxymorphone is an old drug, and doctors have treated and will continue to treat patients for pain relief by giving them oxymorphone. Endo's induced infringement claim does exactly what the Court cautioned against in *Mayo*: it ties up doctors' treatment decisions by forbidding Actavis from informing of them of the results of a clinical study, and it inhibits the development of any other treatment recommendation that might be

developed as a result of that study. As a result, Endo's patent cannot possibly be directed to patent-eligible subject matter.

B. **Straightforward application of the *Mayo/Alice* two-part test shows the '737 patent to claim unpatentable subject matter**

Endo's argument suggests that all method of treatment claims meet the requirements of 35 U.S.C. § 101, because any administering step is an "application" of a law of nature. D.I. 18 at 14. This is not the law under *Mayo*, 132 S. Ct. 1289, and *Alice Corp. Pty, Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

*Alice Corp.*, quoting *Mayo*, sets forth a two step framework for determining whether a claim is patent-eligible. 134 S. Ct. at 2355. The first step is to determine whether the claims at issue are directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea. *Id.* The second step, if the claim is directed to a patent-ineligible concept, is to "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.*

Endo effectively concedes the first step of the analysis. Endo writes, "it is true that the claimed inventions relate to the unexpected discovery that the bioavailability of oxymorphone is increased in patients with renal impairment." D.I. 18 at 14. But "Phenomena of nature, though just discovered . . . are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). Endo's suggestion that the first step of analysis should consider the patent to be "a method of treating pain in renally impaired patients by decreasing the dosage of oxymorphone" (D.I. 18 at 19) is contradicted by Supreme Court precedent and by Endo's own statements in its brief and in its patent, and by Supreme Court precedent. As noted above, Endo conceded that the inventions relate to the discovery of the

7

relationship between bioavailability of oxymorphone and level of renal impairment, not to the development of a novel method of treatment. D.I. 18 at 14. The patent itself explains that oxymorphone was already widely used for pain relief (D.I. 1, Ex. A at 1:19-23), so the administration of oxymorphone is not the invention. Rather, the purported discovery of the relationship between bioavailability of oxymorphone and level of renal impairment—described in extensive detail in the patent (D.I. 1, Ex. A at 27:59-46:46), and summarized under the heading "CONCLUSION," (D.I. 1, Ex. A at 46:50-57)—is the concept that is the subject of the patent. That relationship, "a consequence of the ways in which [oxymorphone is] metabolized by the body," is an unpatentable law of nature. *Mayo*, 132 S. Ct. at 1296-97.[1]

The second step of the *Mayo/Alice* test is to determine whether the claims "add *enough* to their statements of the correlations to allow the processes they describe to qualify as patent-eligible processes that *apply* natural laws." *Mayo*, 132 S. Ct. at 1297 (emphasis in original). Endo's reference to the *Classen* series of cases in contrast to *Mayo* supports, rather than defeats, Actavis's argument for invalidity. *Classen Immunotherapies, Inc. v. Biogen IDEC*, 659 F.3d 1057 (Fed. Cir. 2011) ("*Classen I*"), heavily cited by Endo, is not governing law to the extent it conflicts with the later Supreme Court decision in *Mayo*. When the District of Maryland, on remand from the Federal Circuit's vacation of its dismissal in *Classen I*, reexamined the section 101 issues in light of *Mayo*, it distinguished *Mayo* on the ground that the administering steps in *Mayo*, unlike the administering steps in *Classen*, were stated by the patent itself to be well-understood, routine activity:

---

[1] It is this distinction—that the '737 patent does nothing more than tell doctors to use a natural law to adjust their use of a common drug for its well-known purpose—that avoids Endo's slippery slope argument that Actavis's position would lead to invalidation of all method-of-treatment patents. (D.I. 18 at 19).

8

> In [*Mayo*], the patent acknowledged that "scientists routinely measured metabolites as part of their investigations into the relationships between metabolite levels and efficacy and toxicity of thiopurine compounds." The Supreme Court was thus able to conclude that the steps involved "well-understood, routine, conventional activity previously engaged in by scientists who work in the field." There is no information in the record here that allows the Court, on a motion to dismiss for failure to state a claim, to conclude that the Classen patent claims involve "well-understood, routine, [or] conventional activity."

*Classen Immunotherapies, Inc. v. Biogen IDEC*, No. WDQ-04-2607, 2012 WL 3264941 at *4 (D. Md. Aug. 9, 2012) ("*Classen II*"). Like in *Mayo* and unlike in *Classen II*, the '737 patent here acknowledged that the administration of oxymorphone for pain relief is "well-understood, routine, conventional activity." D.I. 1, Ex. A at 1:19-23. Endo's supposedly new "treatment regimen for renally-impaired patients" (D.I. 18 at 20) does nothing more than administer oxymorphone for pain in a conventional way, and instruct doctors to use a natural law to adjust the dosage. Accordingly, the administering step cannot save the '737 patent. Endo does not argue that any other step of the '737 patent converts the patent-ineligible discovery of low bioavailability of oxymorphone in renally impaired patients into a patent-eligible application. D.I. 18 at 16.

Endo's attempt to distinguish *Mayo* fails, and *Mayo* still corresponds directly to the claim limitations of the '737 patent. Endo incorrectly argues that the *Mayo* claim is different from the '737 patent claim because the *Mayo* claim administers a drug in order to measure the resulting metabolite, but the '737 patent claim administers a drug "to provide safe and effective pain relief." D.I. 18 at 16-20. The *Mayo* claim in fact specified that the drug is used "for treatment of an immune-mediated gastrointestinal disorder." 132 S. Ct. at 1232. The *Mayo* claim is simply to administer the drug to a patient, measure the level of metabolite, and adjust the dosage accordingly to optimize treatment effectiveness. *Id.* The only conceptual difference between

9

this and the '737 patent claim is that the '737 patent claim suggests that the doctor should adjust the dosage based on measurement of a different quantity than the concentration of the administered drug (while specifying that the concentration of the administered drug should remain below a certain level).

## **CONCLUSION**

For the foregoing reasons and those in Actavis's opening brief, Actavis respectfully urges the Court to grant its motion and dismiss Counts I, III, and IV of the Complaint.

|  | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|---|---|
| Of Counsel: | */s/ Robert M. Vrana* |
|  | Adam W. Poff (No. 3990) |
| HOLLAND & KNIGHT LLP | Robert M. Vrana (No. 5666) |
| Charles Weiss | Rodney Square |
| 31 West 52nd Street | 1000 North King Street |
| New York, NY 10019 | Wilmington, DE 19801 |
| (212) 513-3551 | (302) 571-6600 |
| charles.weiss@hklaw.com | *apoff@ycst.com* |
|  | *rvrana@ycst.com* |
| Dated: March 23, 2015 |  |
|  | *Attorneys for Defendants Actavis Inc. and Actavis South Atlantic LLC* |

# **CERTIFICATE OF SERVICE**

I, Robert M. Vrana, hereby certify that on March 23, 2015, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld, Esquire
>Julia Heaney, Esquire
>Morris Nichols Arsht & Tunnell LLP
>1201 North Market Street
>P.O. Box 1347
>Wilmington, DE 19899-1347
>*jblumenfeld@mnat.com*
>*jheaney@mnat.com*
>
>*Attorneys for Plaintiffs*

I further certify that on March 23, 2015, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following:

>Jonathan D.J. Loeb, Esquire
>Dechert LLP
>2440 W. El Camino Real
>Suite 700
>Mountain View, CA 94040
>*jonathan.loeb@dechert.com*
>
>Martin J. Black, Esquire
>Dechert LLP
>Circa Centre
>2929 Arch Street
>Philadelphia, PA 19104
>*martin.black@dechert.com*

Robert D. Rhoad, Esquire
Brian Goldberg, Esquire
Dechert LLP
902 Carnegie Center, Suite 500
Princeton, NJ 08540
*robert.rhoad@dechert.com*
*brian.goldberg@dechert.com*

Blake B. Greene, Esquire
Dechert LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
*blake.greene@dechert.com*

*Attorneys for Plaintiff Endo Pharmaceuticals Inc.*

Jeffrey J. Toney, Esquire
Marcus A. Barber, Esquire
Kasowitz, Benson, Torres & Friedman LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
*jtoney@kasowitz.com*
*mbarber@kasowitz.com*

Rodney R. Miller, Esquire
Paul G. Williams, Esquire
Kasowitz, Benson, Torres & Friedman LLP
1349 W. Peachtree Street, N.W., Suite 1500
Atlanta, GA 30309
*rmiller@kasowitz.com*
*pwilliams@kasowitz.com*

*Attorneys for Plaintiff Mallinckrodt LLC*

Dated: March 23, 2015

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Robert M. Vrana*
Adam W. Poff (No. 3990)
Robert M. Vrana (No. (5666)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*rvrana@ycst.com*

*Attorneys for Defendants*

2